**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **CALCA SOLUTIONS L L C** | **CASE NO. 2:26-CV-03943** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **SHANE JENKINS ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# MEMORANDUM ORDER

Before the court are a Motion to Compel Arbitration and Stay Proceedings [doc. 21] filed by defendants Shane Jenkins and Kyle Baca and a Motion to Compel Arbitration and Stay Proceedings [doc. 22] filed by defendant Archem, LLC. Both motions are opposed by plaintiff Calca Solutions LLC. Docs. 25, 26.

## I. INTRODUCTION

This suit arises from the separation of defendants Shane Jenkins and Kyle Baca from their employment at Calca and their alleged misuse of Calca's trade secrets at, respectively, competitors/defendants and NexSJen Solutions, LLC, and Archem, LLC. Calca alleges as follows: It is a chemical manufacturer located in Calcasieu Parish, Louisiana, and operates as the sole North American producer of high-purity hydrazine ("HPH"). Doc. 1, ¶ 5. The federal government, through the Department of War's Defense Logistics Agency ("DLA") is Calca's largest single direct customer for high purity hydrazine. *Id.* at ¶ 30. In 2024, at the request of DLA, Calca drafted and submitted a "White Paper" entitled "Domestic Sources Production of High Purity Hyrdazine, Monomethyl Hydrazine, and H70" that

provides confidential and proprietary information to the Department of War related to the government's long-term needs and/or requirements for space exploration and national defense. *Id.* at ¶ 35. The White Paper also consists of an integrated and confidential business plan, laying out in detail Calca's proposals for construction and operation of an additional facility to serve its customers' need for hydrazine products. *Id.* at ¶ 39. Accordingly, Calca regards the document as a trade secret and has taken reasonable steps to ensure its confidentiality. *Id.* at ¶ 35.

In October 2025, Calca was acquired by and became a wholly owned subsidiary of NewMarket Corporation ("NewMarket"). *Id.* at ¶ 17. At that time defendant Jenkins served as president of Calca and defendant Baca served as Maintenance, Safety, and Engineering Manager. *Id.* at ¶¶ 18, 21. Jenkins and Baca, who both assumed their respective roles in July 2023, were both among the White Paper's authors. *Id.* at ¶¶ 35–36, 114, 117. In discussing the potential acquisition with NewMarket officials in July 2025, Calca officials touted Calca's progress towards securing DLA funding for the new hydrazine production facility. *See* doc. 9.

Jenkins and Baca continued their employment with Calca after its acquisition by NewMarket. Doc. 1, ¶ 24. Jenkins's employment was terminated for cause in February 2026, based on allegations that he had paid monetary bonuses to himself and other Calca employees without approval or authority from NewMarket. *Id.* at ¶ 44. One month prior to his termination, Jenkins formed NexSJen Solutions, LLC ("NexSJen") without NewMarket's knowledge. *Id.* at ¶ 48. Baca resigned from Calca effective April 2026. *Id.* at ¶ 45. By August 2026, he was working for defendant Archem, a competitor of Calca. *Id.*

at ¶ 53. Based on sightings of Mr. Jenkins at a trade industry event with an Archem badge, Calca also alleges that he has associated himself with that company. *Id.* at ¶¶ 49, 55. Calca further alleges that Jenkins and Baca

> have, without the consent of Calca, taken a copy of Calca's White Paper or trade secret information contained in the White Paper and have misappropriated or threatened to misappropriate Calca's confidential and proprietary trade secrets to benefit themselves individually and to benefit Archem in unfairly and unlawfully competing with Calca, including without limitation, in the efforts of Archem to submit a competing proposal for the federal funds sought by Calca for the expanded production of Hydrazine hydrate, HPH, and MMH.

*Id.* at ¶ 47.

Calca filed suit in this court on October 5, 2026, raising claims of trade secret misappropriation under state and federal law and violation of the Louisiana Unfair Trade Practices Act ("LUTPA"), La. R.S. § 51:1401 *et seq.* against all defendants and breach of employment obligations against Jenkins and Baca. Doc. 1. Calca also sought a temporary restraining order and preliminary injunction against all defendants, restraining and prohibiting them "from using, utilizing, providing, disseminating, appropriating, obtaining or soliciting from current Calca employees any of Calca's protected trade secrets," including but not limited to several specific categories of information. *Id.* at 28–29. The court granted the TRO on October 7, 2026, for the fourteen-day period set forth under Federal Rule of Civil Procedure 65(b)(2), and set the preliminary injunction for hearing on October 20, 2026. Doc. 12. Thereafter, however, the parties agreed to an extension of the briefing schedule and to extend the TRO "to the sooner of one day after the reset hearing

on Calca's Motion for Preliminary Injunction, or a decision on Calca's Motion for Preliminary Injunction . . . ." Doc. 16.

Defendants then filed motions to compel arbitration [docs. 21, 22], asserting that all of Calca's claims are subject to arbitration because (1) the claims against Jenkins and Baca are within the scope of arbitration agreements they executed as part of their employment with Calca and (2) the claims against Archem are likewise arbitrable under the intertwined claims doctrine. Calca opposes the motion, arguing that (1) the claims against Jenkins and Baca are not arbitrable because the arbitration agreements do not supersede clauses within nondisclosure agreements ("NDA's") executed by Jenkins and Baca before the signing of the arbitration agreements; (2) external legal constraints foreclose arbitration because enforcement of the arbitration agreements conflicts with the federal Defend Trade Secrets Act ("DTSA") and discovery may require security clearances to review materials submitted to the Department of War; (3) the arbitration agreements are inapplicable to the claims against Archem and NexSJen; and (4) even if some claims are sent to arbitration, the proper course of action is severance rather than a blanket stay. Doc. 25, att. 3; doc. 26.

## II.
## LAW & APPLICATION

### A. Governing Law

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that written arbitration agreements in "any maritime transaction or a contract evidencing a transaction involving commerce" "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts conduct

a two-step inquiry when resolving a motion to compel arbitration under the FAA. First, the court decides whether the parties agreed to arbitrate their dispute—that is, whether (1) there is a valid agreement to arbitrate and (2) the dispute falls within the scope of that agreement. *OPE Int'l LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445–46 (5th Cir. 2001). It then looks to whether legal constraints external to the agreement foreclose arbitration. *Id.* The court applies state law when determining whether a valid arbitration agreement exists, unless the state law is preempted by federal law. *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 740 (5th Cir. 2026).

**B. Application**

**1. Arbitrability**

**a. Relevant agreements**

The relevant arbitration agreements arise from Worksite Employee Acknowledgments ("WEA's") executed by Baca and Jenkins on, respectively, July 31 and August 2, 2023, as a condition of their employment. Doc. 1, ¶ 25; *see* doc. 5, atts. 5 & 6. These documents delineate obligations between the worksite employer, Calca; the agency it has contracted with to assist on human resources matters, G&A Partners (also known as "PEO"); and the employee. Doc. 5, att. 5, p. 1. Among other things, the WEA's outline the employee's duty, both during and after his employment, "to maintain the confidentiality of any Private Information you access or receive and to use it only for purposes of performing your job." *Id.* at 2. They also state:

> 10. **Arbitration**. Worksite Employer and PEO utilize binding arbitration to resolve disputes, as set forth in the Worksite Employer/PEO Arbitration Agreement. You will be required to execute the applicable Arbitration

> Agreement, which by this reference is incorporated into this Acknowledgment. If you have a separate valid arbitration agreement with Worksite Employer that agreement will apply to disputes between you and Worksite Employer, and the applicable arbitration agreement provided by PEO will apply to disputes between you and PEO.

*Id.* at 3. The referenced "Arbitration Agreement" provides, in relevant part:

> The employee identified below ("Employee"), on the one hand, and Worksite Employer, Calca Solutions LLC ("Company"), and G&A Partners ("PEO" or "G&A Partners"), on the other hand, agree to utilize binding arbitration as the sole and exclusive means to resolve all covered disputes that may arise by and between Employee and the Company and/or Employee and PEO, including but not limited to disputes regarding the application and selection process, the employment relationship, termination of employment, and compensation. . . . . This Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). **All disputes covered by this Agreement will be decided by a single arbitrator through final and binding arbitration and not by way of court or jury trial.**
>
> **COVERED CLAIMS**. This Agreement is intended to be as broad as legally possible. Except as otherwise provided in this Agreement, Employee, the Company and G&A Partners agree that any claim, dispute, and/or controversy, past, present, or future that Employee may have against the Company . . . or G&A Partners . . . , or that the Company or G&A Partners may have against Employee, shall be submitted to and determined exclusively by final and binding arbitration. Except as otherwise provided, included within the scope of this Agreement are all disputes, whether based on tort, contract, common law, statute . . . , equitable law, or otherwise.
>
> The arbitrator—and not any federal, state, or local court or agency—will have exclusive authority to resolve any dispute relating to the scope, applicability, validity, enforceability, or waiver of this Agreement. . . .
>
> **CLAIMS NOT COVERED BY THIS AGREEMENT AND LIMITATIONS ON HOW THIS AGREEMENT APPLIES**. The following claims are not covered under this Agreement: (i) workers' compensation benefits, state disability insurance benefits or unemployment insurance benefits; however, this Agreement applies to discrimination or retaliation claims based upon seeking such benefits; (ii) disputes that an applicable federal statute expressly states cannot be arbitrated or subject to a pre-dispute arbitration agreement; and (iii) disputes that may not be subject to a pre-dispute arbitration agreement under the Ending Forced Arbitration

> of Sexual Assault and Sexual Harassment Act (at Employee's election). If any claim(s) not covered under this Agreement are combined with claims that are covered under this Agreement, to the maximum extent permitted under applicable law, the covered claims will be arbitrated continue to be covered under this Agreement.

Doc. 21, att. 2, pp. 3–4. The agreement "will survive the termination of Employee's employment and the expiration of any benefit, and it will continue to apply to G&A Partners and Employee upon Employee's transfer, rehire or hire by another company . . . ." *Id.* at 6. Baca and Jenkins both executed the arbitration agreements on the same dates as they executed the WEA's. *See* doc. 21, att. 2, p. 7; doc. 21, att. 3, p. 7.

Calca does not dispute that its claims against Jenkins and Baca fall within the plain terms of the arbitration agreements. Instead, it argues that these agreements are superseded by conflicting forum-selection provisions in NDA's executed by Jenkins and Baca with Calca's predecessors. Jenkins's NDA is with Calca predecessor Lonza America, Inc. and was executed on July 29, 2020. Doc. 28, att. 3. Baca's NDA is with Calca predecessor Arxada LLC and was executed on November 10, 2022. Doc. 28, att. 4. Both NDA's outline the employee's obligations to safeguard confidential information, including after the termination of employment. Doc. 28, att. 3, p. 3; doc. 28, att. 4, p. 4.

Under the Baca NDA, the agreement is "construed in accordance with the laws of the State in which Employee works, without regard to its conflict of laws principles." Doc. 28, att. 4, p. 4. Further:

> Each Party irrevocably consents to the personal jurisdiction of the federal courts . . . and the state courts located in the State in which Employee's work location is located for any suit or action arising from or related to this Agreement, and waives any right it may have to object to the venue of such courts.

*Id.* at 5. The Jenkins NDA, meanwhile, provides that the agreement is governed by New Jersey law and that "[i]n the event of litigation relating to this Agreement, if a court of competent jurisdiction determines that Employee has breached this Agreement," the employee will be liable for the company's costs and attorney fees. Doc. 28, att. 3, p. 3. Finally, both NDA's contain identical clauses stating that no agreement purporting to modify or waive a portion of the NDA is binding "unless in a writing that references this Agreement and is signed by the parties." Doc. 28, att. 3, p. 3; doc. 28, att. 4, p. 4.

**b. Who determines arbitrability**

As noted above, the arbitration agreements grant the arbitrator "exclusive authority to resolve any dispute relating to the scope, applicability, enforceability, or waiver" of the agreements. Doc. 21, att. 2, p. 3. Such clauses are enforceable based on the parties' clear and unmistakable intent, overcoming the default rule that arbitrability be left for judicial determination. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). But even a clear and unmistakable delegation clause may be contradicted by a separate writing. In these cases, "traditional contract principles apply" and the court must answer whether the other writing subverts or supersedes the parties' apparent consent to arbitrate. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 149–50 (2024).

**c. Validity of arbitration provision**

The asserted conflict between provisions of the NDA's and the arbitration agreements implicates the validity of the arbitration agreement, which is a matter of state contract law. *Exec. Strategies Corp. v. Sabre Indus. Inc.*, 2020 WL 7213002, at *3 (W.D.

La. Dec. 7, 2020). "Because 'arbitration is simply a matter of contract between the parties,' the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate.'" *Klein v. Nabors Drilling USA LP*, 710 F.3d 234, 236 (5th Cir. 2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)). Under Louisiana law, which the parties appear to agree is the applicable state law, interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code art. 2045. The words of a contract must be given their generally prevailing meaning. La. Civ. Code art. 2047. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046.

Defendants maintain that the WEA's supersede the NDA's by virtue of a merger clause in the latter, and that there is no evidence that Calca is an assignee of either NDA between its former employees and its respective predecessors. But the court has no need to reach those arguments, because neither the forum selection clause in Baca's NDA nor the brief reference to possible litigation in the Jenkins NDA sufficiently contradicts the arbitration agreements. A forum selection clause nullifies an arbitration clause when it expressly forbids arbitration or expressly requires the parties to litigate all of their claims in the designated forum. *Personal Sec. & Safety Systems Inc. v. Motorola Inc.*, 297 F.3d 388, 395–96 (5th Cir. 2002). The lack of any such restrictions, on the otherhand, "suggests that the parties intended [the forum selection clause] to apply only in the event of a non-arbitrable dispute that must be litigated in court." *Id.* at 396. Such is the case here, where the arbitration agreement even goes so far as to list several types of claims that are exempt

from arbitration. Although Calca asserts that the arbitration agreement was only intended to cover "employment-related claims," given PEO's human resources role, the agreement applies to claims by or against Calca alone, contains no such restriction as to types of claims, and states that it "is intended to be as broad as legally permissible." Calca also notes that the arbitration agreement provides only that it will "continue to apply to G&A Partners and Employee" after the employee's transfer or hiring by another company, with no mention of Calca. But the agreement states plainly that it "will survive the termination of Employee's employment," and does not state that it will cease applying to Calca on any condition. Accordingly, to the extent that the NDAs were not superseded by the subsequent agreements, the references in the former to choice of forum and the possibility of litigation do not conflict with the arbitration agreements' broad requirement that certain claims by or against any of the parties "shall be submitted to and determined exclusively by final and binding arbitration."

**2. External legal constraints**

Calca next argues that external legal constraints prevent enforcement of the arbitration agreement as to its claims under the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* To this end it notes that the DTSA allows for the issuance of orders for civil seizure for the purpose of seizing property necessary to prevent the propagation or dissemination of subject trade secrets. 18 U.S.C. § 1836(b)(2). It maintains that claims under this statute are thus unsuited for arbitration, because an arbitrator has no authority to order a civil seizure or to direct the United States Marshals Service to execute such an order. It also argues that the arbitrator would have no facility or

capability of securing seized property, a heightened concern in this matter given the confidential materials at issue submitted to the Department of War, or of obtaining the security clearances that may be required to review discovery in this matter.

As Calca admits, other courts have found that claims brought under the DTSA are arbitrable. *See Mavel, a.s. v. Rye Development, LLC*, 626 F.Supp.3d 331, 343 (D. Mass. Sep. 6, 2022); *NY Knicks, LLC v. Maple Leaf Sports & Ent., Ltd.*, 2024 WL 3237563, at *10 (S.D.N.Y. June 28, 2024); *see also Convergen Energy LLC v. Brooks*, 2020 WL 5549039, at *27 (S.D.N.Y. Sept. 16, 2020); *iDoc Holdings, Inc. v. Goethals*, 2021 WL 2895635, at *3–*4 (S.D. Fla. Jul. 9, 2021). Calca maintains that those decisions are wrongly decided, for the reasons described above. But the party opposing arbitration for his statutory claims must show that "Congress intended to preclude a waiver of a judicial forum." *Robertson v. Intratek Computer, Inc.*, 976 F.3d 575, 579 (5th Cir. 2020) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). Such intent will be "deducible from text or legislative history," and the court must keep in mind the federal policy favoring arbitration in deciding this aspect of arbitrability. *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). To this end, "the absence of any specific statutory discussion of arbitration or class actions is an important and telling clue that Congress has not displaced the Arbitration Act." *Id.* (quoting *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 517 (2018)).

Calca can point to no such statutory language within the DTSA, even though Congress well knows how to prohibit or limit arbitration when it wishes. *See Epic Systems Corp.*, 584 U.S. at 514 (collecting examples). Additionally, Calca's allegations do not

support a finding at this stage that civil seizure is necessary to effectuate the DTSA's purpose. The statute only allows for such a remedy in "extraordinary circumstances," in order "to prevent the propagation or dissemination of the trade secret," and the movant must first show that an injunction or other form of equitable relief would be inadequate. 18 U.S.C. § 1836(2)(A)(i), (ii)(I). And as Jenkins and Baca note, Calca has announced its intention to seek seizure under the DTSA through both its Motion for Expedited Discovery [doc. 29, att. 1] and its opposition [doc. 25, att. 3] to the Motion to Compel Arbitration. The DTSA conditions the availability of this remedy on a finding that "the applicant has not publicized the requested seizure." 18 U.S.C. § 1836(b)(2)(A)(ii)(VIII). Finally, Calca's representations on the involvement of classified material are speculative at best. Calca has not shown that any documents filed with this court require a security clearance, or that an arbitrator would need to review such materials in order to reach the merits of its claims. Accordingly, it fails to show a basis for avoiding arbitration.

**3. Applicability to non-signatories**

The parties next dispute whether the arbitration agreement applies to Calca's claims against the non-signatory defendants, NexSJen and Archem. Intertwined claims estoppel prevents "a signatory from avoiding arbitration with a non[-]signatory when the issues the non[-]signatory [are] seeking to resolve are intertwined with the agreement that the estopped party has signed." *Chubb Capital I Ltd. v. New Orleans City*, 732 F.Supp.3d 558, 570 (E.D. La. 2024) (quoting *Traders' Mart, Inc. v. AOS, Inc.*, 268 So.3d 420, 427 (La. Ct. App. 2d Cir. 2019)). The doctrine was adopted by the Fifth Circuit from the Eleventh, applying federal common law, in *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524

(5th Cir. 2000). Since that time it has also been applied by a number of Louisiana courts. *E.g.*, *Traders' Mart, Inc.*, 268 So.3d at 427; *Sturdy Built Homes, LLC v. Carl E. Woodward, LLC*, 82 So.3d 473 (La. Ct. App. 4th Cir. 2011); *Pontchartrain Nat. Gas Sys. v. Texas Brine Co., LLC*, 317 So.3d 715, 743–44 (La. Ct. App. 1st Cir. 2020).

As Calca notes, the Fifth Circuit recognized after the Supreme Court's decision in *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009), that arbitration clauses must be interpreted under state contract law rather than federal common law. *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 255 (5th Cir. 2014). The Fifth Circuit thus modified its prior decisions, including *Grigson*, to conform with *Arthur Andersen*. *Id.* Calca maintains that, even though Louisiana appellate courts have occasionally cited *Grigson* and applied its intertwined claims doctrine after *Crawford Professional Drugs*, these decisions are wrongly decided and that the doctrine does not comport with Louisiana law. But Louisiana courts have long recognized the jurisprudential doctrine of equitable estoppel, and the Louisiana Supreme Court has denied writs on their application of the intertwined claims test even in the wake of *Arthur Andersen* and *Crawford Professional Drugs*. *E.g. Sturdy Built Homes*, 82 So.3d 473 (La. Ct. App. 4th Cir. 2011), *writ denied*, 85 So.3d 94 (La. 2012); *Pontchartrain Nat. Gas Sys.*, 317 So.3d 715 (La. Ct. App. 1st Cir. 2020), *writs denied*, 317 So.3d 323 (La. 2021). Absent any direct contrary authority from the Louisiana Supreme Court, the undersigned regards the doctrine as effectively adopted under Louisiana jurisprudence.

Here, as in *Pontchartrain Natural Gas Systems*, the plaintiff is a signatory to the arbitration agreement and "raises allegations of substantially interdependent and concerted

misconduct by both the non-signatory and one or more of the signatories to the contract." 317 So.3d at 743–44 (citing *Grigson*, 210 F.3d at 527). "In light of the complex types of tortious claims alleged, it is nearly impossible to differentiate where one entity's fault would end and another would begin." *Id.* at 744. Here the individual defendants are alleged to have engaged in ongoing misconduct at the behest of or for the benefit of Archem, which employed at least one of them, and using NexSJen as a vehicle. Calca further alleges that Archem is continuing to misuse its trade secrets in order to interfere with its attempts to gain a contract from the Department of War. As the Fifth Circuit noted in *Grigson*, which Louisiana courts have continued to endorse:

> [D]etrimental reliance by [the signatory defendant] *cannot* be denied: it and the signatory-plaintiff had agreed to arbitration in lieu of litigation (generally far more costly in terms of time and expense); but, the plaintiff is seeking to avoid that agreement by bringing the action against a non-signatory charged with acting in concert with that non-defendant signatory.

210 F.3d at 528 (emphasis in original). Given this detrimental reliance, in addition to the absence of any positive law in Louisiana precluding arbitration for these claims and the fact that it was Calca that sought to bind the individual defendants to a broad arbitration agreement in the first place, the court is persuaded that equitable estoppel is appropriate. The alleged misconduct by Archem and NexSJen must also therefore be referred to arbitration in order to give effect to the arbitration agreement.

**4. Disposition of suit**

All of the parties seeking to compel arbitration have requested that the suit be stayed rather than dismissed. The suit is subject to a mandatory stay under § 3 of the FAA. 9 U.S.C. § 3. Because the suit will undoubtedly remain dormant for some time, however, the

court regards administrative closure as the more fitting disposition. "The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; *i.e.*, administratively closed cases are not counted as active." *See Mire v. Full Spectrum Lending Inc.*, 389 F.3d 163, 165 (5th Cir. 2004).

## III.
## CONCLUSION

For the reasons stated above, the court hereby **ORDERS** that the Motion to Compel Arbitration and Stay Proceedings [doc. 21] filed by defendants Shane Jenkins and Kyle Baca and the Motion to Compel Arbitration and Stay Proceedings [doc. 22] filed by defendant Archem LLC be **GRANTED**, that all claims in this matter be **COMPELLED** to arbitration, that all other motions herein be **DENIED AS MOOT** and all settings be **VACATED**, and that the case be **ADMINISTRATIVELY CLOSED**.

**THUS DONE AND SIGNED** in Chambers on the 18th day of November, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**